## EBENEZER FREEMAN, *Ex'r of* JOHN GILMAN's *Estate,* vs. UPHAM T. CRAM.

The equitable assignee of a chose in action, who took the assignment during the pendency of a suit thereon, and who afterwards, without any knowledge that the suit was groundless, prosecuted it for his own benefit, but failed to recover, is not liable to the defendant for taxable costs or other expenses incurred in the defence.

EXCEPTIONS from the Court of Common Pleas.

This was an action of the case commenced by *John Gilman* in his life-time against the said *Cram,* for the *December Term* of the Court of Common Pleas, 1833, wherein the said *Gilman* in his declaration set forth, that whereas at said *Augusta,* before the eighth day of *April,* 1833, one *John Wells* had instituted a suit in the Court of Common Pleas for said county, in the name of

one *John Reed*, as nominal plaintiff against the said *Gilman*, upon a false and groundless claim which he the said *Wells* pretended to have and own in virtue of a sale and assignment thereof from the said *Reed* to himself. And said *Wells* had instituted said suit, as aforesaid, and upon the day aforesaid was prosecuting the same in said Court for the purpose of recovering to his own use the amount of said pretended claim, and the suit pending thereon as his own, and ever afterwards took to himself the control and management of said suit, and for the purpose of recovering the amount of said pretended claim to his own use, and greatly to the injury of the said *Gilman*, prosecuted said suit in said Court until judgment was therein rendered by the consideration of the Justices of said Court, at the term thereof holden on the second *Tuesday* of *August*, 1834, that the said *Gilman* should recover his costs therein against the said *Reed*, which costs were taxed by said Court at the sum of thirty-four dollars and forty-six cents, as by the record thereof appears. And the said *Gilman* avers, that said claim at the time of the commencement of said suit thereon, and at the time of the said pretended assignment thereof from said *Wells* to said *Cram*, was and always had been wholly false and groundless.

And the said *Gilman*, on the twenty-sixth day of said *August*, sued out his execution against said *Reed*, in due form of law, and on the same day delivered the same to one *Geo. W. Stanley*, then and ever since a deputy-sheriff of said county, for service, who afterwards, on the twenty-fifth day of *Nov.* 1833, returned the same satisfied in part, *viz:* for the sum of five dollars and no more, of which the said *Cram* there afterwards on the same day had notice, whereby he became liable to the plaintiff to pay him the unsatisfied balance of said execution, together with the further sum of twenty-five dollars for his care and trouble and for counsel fees and other expenses in carrying on the defence of said suit, and not made up nor included in the amount of said judgment. Whereby the said *Gilman* has been greatly injured. And after the aforesaid action was continued to *April Term* of said Court, 1834, the plaintiff, *John Gilman*, deceased. At the said *April Term*, a motion was made that said *Freeman*, the executor of the said *Gilman*, should be allowed to come in and prosecute this

action and which motion was sustained by the Court, and the said *Freeman* accordingly came into Court and took upon himself the prosecution of this action. At the trial of this action the facts alleged in the plaintiff's declaration were proved; whereupon the defendant's counsel requested the Court to instruct the jury;

1st. That this action did not survive to the executor.

2d. That the facts aforesaid were not sufficient in law to entitle the plaintiff to maintain this action.

The trial was before *Perham J.*, who refused to give these instructions; but directed the jury, that the action did survive to the executor; that the facts aforesaid were in law sufficient to entitle the plaintiff to maintain this action.

The jury returned a verdict for the plaintiff.

To these instructions the defendant's counsel filed exceptions.

The case was argued in writing by *A. Redington, Jr.*, for the plaintiff, and by *Lombard*, for the defendant.

As the exceptions were sustained solely, because the second instruction requested was not given, the arguments relative to the first are not inserted.

In the argument for the *defendant*, it was said, that this was an action of the first impression, furnishing in itself no slight argument against it. Neither party by the common law is entitled to costs. The plaintiff therefore has no case, unless the statutes of the State afford him a remedy. By our laws the prevailing party is allowed costs, and they are taxed only against the opposing party on the record, and in the action of *Reed* against *Gilman*, they were actually taxed against *Reed*, and a portion of them collected on execution of him. This is not an action for malicious prosecution. The form of action is not adapted to it, nor will the facts support it. It is not alleged or proved, that the defendant had any agency in the institution of the suit, or that the prosecution of it was continued further, than it would have been, if no assignment had been made to him; or that the defendant had any knowledge, that *Reed's* action against *Gilman* was not both just and well founded.

*Redington.* The facts in the case shew a sufficient ground of action. The *statute, ch.* 59, *sec.* 17, provides that " the prevailing party shall be entitled to his legal costs," but is wholly silent

as to the mode of obtaining them. It does not even state against whom, or what party, he shall recover them. But the intention is, that he shall recover them against the party, who unjustly compelled him to incur them. Another statute, it is true, *ch. 60, sec. 3*, provides that the party obtaining judgment in any civil action shall be entitled to execution, &c. But this is not the exclusive remedy. Debt would lie, as well as *scire facias*. The Court will allow a process by the injured party suited in its form, and affectual in its operation, to the object in view. Within the equity of the statute allowing costs, a defendant, prevailing in a suit prosecuted by an assignee for his own benefit, is entitled to a remedy against the real party. The assignee, in practice, is deemed the real party, and after notice payment to the assignor is no discharge. The assignee is bound by former verdicts and judgments, as truly as the nominal party. *Rogers v. Haynes*, 3 *Greenl.* 362. It is by the extension of the principles of equity that his privileges are secured to him by the courts. Shall he then prosecute in court, as his own, demands which he has purchased in the name of some person, real or fictitious, under an indulgence solicited in equity, without a particle of liability on his part? Shall he be, at the same moment, a party, and not a party, claiming the benefits, but discarding the liabilities which the law has made incident to parties? Shall he ask equity and not do equity?

Independent of any statute, this action well lies. An individual without any reality of justice assails his neighbour in the forms of litigation, and inflicts anxiety, trouble and expense upon him by an unjustifiable interference with the concerns of others. For this invasion of right, what law precludes a remedy? It is said, that the common law allows no costs. But does that prove, that an interference like the one in controversy can be practised with impunity? An action of tort was always available for redress to a person, who has been assailed by one in the disguise of another, whether in acts of personal violence, deceptive practices, or an injurious intermeddling under the forms of law. Good policy requires, that the action should be maintained. If such suits are to be multiplied with the same rapidity they have been recently there should be some remedy for the defendants, who are thus put to expense. He commented on the case of *Rogers v. Haynes*,

3 *Greenl.* 362, and contended, that it was not against him, and cited the following authorities. *Calhoun* v. *Dunning*, 4 *Dallas*, 120; *Schoolcraft* v. *Chapman*, 5 *Cowen*, 18; *Norton* v. *Rich*, 20 *Johns.* 475; *Ketcham* v. *Clark*, 4 *Johns.* 484; *Cauley* v. *Ridgway*, 1 *Binney*, 496; *Waring* v. *Barrett*, 2 *Cowen*, 460; *Webb* v. *Ward*, 7 *T. R.* 296.

After a continuance, the opinion of the Court was delivered by

WESTON C. J. — Whoever sues another in the name of a fictitious plaintiff, either one not in being, or one who is ignorant of the suit, is liable to be indicted, if he is not answerable to the party injured in a civil suit. An action lies also for a malicious prosecution, which may generally be supported, when the prosecution was instituted without probable cause. But a man may prosecute any action, for which he has probable cause; at the peril only of being adjudged to pay costs. Many claims are set up and pretended, which turn out to be unwarranted. They are found to be false, because there is a failure of proof, and it may be of truth also, in the averments, by which they are attempted to be supported. Hence such claims may well be denominated false and pretended. But there might have existed such circumstances, or such color for them, as to amount to a probable cause.

If in this case there was probable cause, which might have existed, and which is not disproved, *Reed* might lawfully prosecute the claim, of which the plaintiff complains; or he might assign it to another, which if the demand be not negotiable, carries with it an authority to the assignee, to prosecute thereon a suit in his name. It does not appear, if *Reed* had been as plaintiff the only party in interest, that he had not a lawful right to prosecute the suit. Nor does it appear, but what *Wells*, the assignee, had reason to believe that the action was well founded. Certainly there is nothing in the case showing, that he knew it to be groundless. If there was, he might be charged for a malicious prosecution, upon proper averments, which would afford to the plaintiff an apt remedy.

Still less does it appear that the defendant, to whom the demand was assigned after the action, had the least knowledge or suspicion, that it was not a fair claim. He had a lawful right to

purchase a chose in action, and to prosecute a suit, by which its recovery was attempted to be enforced. It is not pretended, that the defendant made any promise, express or implied, to the plaintiff's testator, to pay him the costs, or indemnify him for the expenses of an action. And he was guilty of no tort or wrong, which would render him liable to the plaintiff's testator. The only ground upon which he can be charged, is, that being substituted for the original plaintiff, he was liable for costs. These are not allowed at common law; and therefore can be claimed only under the statute.

By the act, regulating judicial process and proceedings, *statute of 1821, ch. 59, sec. 17*, it is provided, that in all actions the party prevailing shall be entitled to his legal costs. They are to be ascertained by the order or judgment of the court, before whom the action is pending. Payment is not enforced in our practice by attachment, but by execution. An action of debt may be brought upon the judgment; but neither assumpsit or case can be maintained, for the recovery of legal costs. It is insisted, that the statute allows costs to the prevailing party, but does not prescribe against whom they shall be adjudged; but the necessary implication is, that they must be awarded against the party, who does not prevail; and this, by the uniform practice of our courts, is the adverse party upon the record.

The real party in interest, if disclosed to the Court, is protected from any fraudulent attempts of the nominal party to defeat his rights; but no judgment is ever rendered against him. If he claims the equitable interposition of the Court in his favor, they may in their discretion grant it, upon condition that he shall give security to the adverse party for his costs; but this would be matter of stipulation; and could form no part of the final judgment of the Court. Upon the facts in this case, we are of opinion, that costs neither have nor could be legally awarded against the defendant.

In *Rogers* v. *Haines*, 3 *Greenl.* 362, the first count was for a malicious prosecution; the second was for bringing without authority a suit in the name of another, which he knew to be paid, but without the imputation of malice. The court held, that the scienter, alleged in the second count, was an important and sub-

stantive part of the charge, and must therefore be proved, and this not having been done, they found it unnecessary to decide, whether the averments in that count went far enough to sustain the action. In *Calhoun* v. *Dunning*, 4 *Dal.* 120, the court decided, that the party beneficially interested, who prosecuted in the name of a trustee, should be bound by the result.

*Webb* v. *Ward et al.* 7 *T. R.* 292, was brought by an uncertificated bankrupt, for the benefit of the assignees, but the court directed a stay of the proceedings, until security was given for the costs. But in *Snow* v. *Townsend*, 6 *Taunton*, 123, where the plaintiff had been discharged from prison, under the insolvent act, and had been sued for a debt due to him before his assignment, which the assignee had refused to sue, the court would not stay proceedings, until security was given for costs, saying that the case of *Webb* v. *Ward* had been much questioned.

The authorities, cited from the fourth of *Johnson* and the fifth of *Cowen*, were cases of insolvency. In *Warring* v. *Barrett*, 2 *Cowen*, 460, the plaintiff was out of the State; and the Court refer to a rule of their practice. But as costs in our State depend on statute, the law and usage of other States cannot be safely resorted to for our guide.

The opinion of the Court is, that the Judge below should have instructed the jury, that the action was not supported by the evidence in the case; and the exceptions are accordingly sustained.